UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

UNITED STATES OF AMERICA                          :

     - v. -                                              :      12 Cr. 409 (PAE)

JAMES PETERSON,                                         :

            Defendant.                        :

                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PRE-TRIAL RELIEF

 

                                         PREET BHARARA
                                         United States Attorney for the
                                         Southern District of New York
                                         One St. Andrew's Plaza
                                         New York, New York 10007

ANDREA L. SURRATT
Assistant United States Attorney
    - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this Memorandum of Law in response to the motion of defendant James Peterson (the "defendant"). The defendant moves to suppress a gun seized on February 20, 2012 by the New York City Police Department ("NYPD"); to compel discovery; and to compel the government to provide "additional information" regarding the indictment.

As there are no material facts in dispute, the Government submits that a hearing is unnecessary in this case. In the early morning hours of February 20, 2012, NYPD patrol officers received a call over their radio indicating that a "[m]ale black, du rag, black coat, wearing all black" is in front of a particular location in the Bronx "with a gun on him." (Def. Ex. D). The 911 caller acknowledged, and the dispatcher relayed to officers, that the 911 caller "didn't visually see the gun" but thought the person in question had one. (Id.). When officers responded to the address, they saw an individual matching the description given by the 911 caller. (Complain ¶ 5(b)). The officers stopped the individual and found a gun in his waistband. (Id. ¶ 5(d)). The individual, who was arrested, was identified as the defendant. Nothing in the defendant's affidavit contracts the Government's account of the facts in this case. Because the NYPD officers who responded to the 911 call had reasonable suspicion to stop the defendant, the defendant's motion to suppress the gun should be denied as a matter of law.

In addition, the defendant renews his motion for production of additional discovery and has also submitted a letter dated July 19, 2012 to the Court in which he contends that he has located an "apparent irregularity" in the foreperson's signature on the Indictment in this case. For the reasons discussed below, the defendant's motions should be denied.

1

## BACKGROUND

The defendant is charged in a one-count indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g).  The following facts are relevant in response to the defendant's motion:

In the early morning hours of February 20, 2012, two NYPD officers ("Officer-1") and ("Officer-2") were on patrol in a marked NYPD car when they received a radio dispatch based on a 911 call. (Complaint ¶ 5(a)).  In the 911 call, which was made at 4:11 a.m., a caller who provided his name, address, and telephone number told the dispatcher that he "got into an altercation with this guy" and that he thinks "he got a gun now." (Def. Exh. C). Although the caller did not see a gun, the caller reported that the individual was "coming back with a gun." (Id.).  The caller also gave a description of the individual.  The caller said that "I think he is black.  But he got black du rag on, black coat on . . . . [h]e's dressed in all black now."  The caller also stated that the individual in question is in front of his apartment building, which the caller previously reported is 739 East 182nd Street. (Id.).

Another dispatcher relayed this information to Officer-1 and Officer-2 over the radio.  The dispatcher stated "(U/I) with a firearm . . . 739 East 182 Clinton and Prospect.  Male caller states male's in front of the location with a gun on him.  He didn't visually see the gun, but the person said he had one.  Male black, du rag, black coat, wearing all black.  The complainant is in in apartment [redacted]." (Def. Exh. D).[1]

---

[1] On June 13, 2012, the Government provided the defense with redacted copies of the 911 call and radio run.  As noted in its discovery letter, from the recording of the 911 call, the Government redacted the portions of the call where the caller provided his name, address, and telephone number.  From the radio run, the Government redacted the portion of the recording where the caller's apartment number was repeated. (Def. Exh. A).  The Government declined to unredact this information upon request from defense counsel on the grounds that it was sufficient

Officers responded to 739 East 182nd Street in the Bronx. (Complaint ¶ 5(a)). As the officers were arriving on the scene, the dispatcher called the original 911 caller back at the number he had provided.  The caller answered his phone and again repeated that he had not seen the gun in question. (Def. Exh. D). The dispatcher then told the officers who were on the scene that he had called the complaintant back and that the complaintant provided this information. (Id.).[2]

Upon arriving at 739 East 182nd Street, Officer-1 saw a black male, wearing all black clothing.  The black male – who was later identified as the defendant – walking away from the apartment building located at 739 East 182nd Street. (Complaint ¶ 5(b)). The officers exited their police car, approached the defendant, and asked him to stop. (Complaint ¶ 5(c)).  Officer-1 placed his hand on the defendant's back in order to lead him to a fence where Officer-1 could frisk the defendant for weapons. (Complaint ¶ 5(d)). When Officer-1 placed his hand on the defendant's back, Officer-1 felt what he believed to be a gun. (Id.). Officer-1 lifted the defendant's shirt and removed the gun that is the subject of the defendant's motion to suppress. (Complaint ¶ 5(e)).  At 4:23 a.m., twelve minutes after the initial 911 call was made, the defendant was arrested and transported to the NYPD station house.  The Government additionally proffers that after the defendant was arrested, officers located the 911 caller in the apartment building where he stated on the 911 call that he lived.  The caller spoke with the officers at the NYPD precinct.

---

that defense counsel knew that the caller had provided his name, address, and phone number but that defense counsel did not need to know, for purposes of a motion to suppress, the actual identity of the caller.

[2] It appears that the officers stopped the defendant after the dispatcher had told the officers that the dispatcher was going to call the 911 caller back, but before that call had been completed and the information from the call relayed to the officers at the scene.

**ARGUMENT**

The defendant's declaration does not put any material issues of fact at issue and, therefore, a hearing is unnecessary and the defendant's motion should be denied as a matter of law.  His declaration states that he was not "behaving suspiciously or exhibiting any criminal behavior." (Def. Dec. ¶ 6). The Government does not, however, rely on the officers' observation of the defendant's demeanor before he was stopped on February 20, 2012.  Rather, the Government contends that, as a matter of law, the 911 call provided the reasonable suspicion necessary for the NYPD officers to stop and frisk the defendant.

The defendant also renews his motion for production of additional discovery.  At this time, the Government will produce only materials pursuant Federal Rule of Criminal Procedure 16 and those materials that it is obligated to produce pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  Finally, the defendant submitted a letter dated July 19, 2012 ("Def. Ltr.") in which he believes he has located an "apparent irregularity" in the foreperson's signature on the Indictment in this case, and asks for "additional information to clarify the issue regarding these signatures."  Grand jury proceedings are accorded a presumption of regularity, and because in this case the defendant cannot show proof of irregularities, his request for additional information on this matter must be rejected.

**ARGUMENT**

**I.      The Defendant's Motion to Suppress the Gun Should be Denied as a Matter of Law**

**A.      Applicable Law**

An evidentiary hearing on a motion to suppress is required only if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to

conclude that contested issues of fact" are in question. United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). A district court may deny a defendant's request for a hearing where the defendant's moving papers do not create a genuine dispute as to any material fact. United States v. Caming, 968 F.2d 232, 236 (2d Cir. 1992) (affirming the denial of a suppression hearing where "[t]he defense affidavits did not deny or refute the allegations" in the Government's affidavit). Ordinarily, the disputed issue of fact must arise from affidavits that are based on personal knowledge of the facts. United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (finding defense counsel's affidavit submitted in support of a suppression motion insufficient to raise an issue of material fact); United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) (denying hearing on motion to suppress because admissible evidence submitted by defendant, if credited, would not establish a prima facie case on the issue).

"Under Terry v. Ohio, 392 U.S. 1 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot, and may frisk him if they reasonably believe he is armed and dangerous." United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007). Reasonable suspicion arises when law enforcement officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).

"Reasonable suspicion" is measured objectively, United States v. Glover, 957 F.2d at 1010, and reviewing the circumstances as a whole. United States v. Barlin, 686 F.2d 81, 86 (2d Cir. 1982). The test for reasonable suspicion is a "rather lenient" one, United States v. Santana, 485 F.2d 365, 368 (2d Cir. 1973), which the Second Circuit has described as "not a difficult one to satisfy," United States v. Oates, 560 F.2d 45, 63 (2d Cir. 1977). Under the

"reasonable suspicion" standard, "the likelihood of criminal activity . . . falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. at 274.

      Moreover, "Reasonable suspicion may be based upon information from a confidential informant so long as the tip bears sufficient 'indicia of reliability.'" United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007) (quoting Adams v. Williams, 407 U.S. 143, 147 (1972)).  In his brief, the defendant cites cases in which an anonymous source provides information to the police.  In Florida v. J.L, 529 U.S. 266 (2000), for instance, the Supreme Court held that "a call made from an unknown location by an unknown caller" in which the caller told police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" did not have sufficient indicia of reliability to serve as the basis for a Terry stop. Id. at 268, 270.  The Supreme Court also held in J.L, however, that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." Id. at 270 (internal quotations and citations omitted).  Indeed, the Second Circuit has held that, "[t]he veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be trusted."  Elmore, 482 F.3d at 180.

      In United States v. Terry-Crespo, 356 F.3d 1170 (9th Cir. 2004), the Ninth Circuit rejected the defendant's suppression motion in a case in which a 911 caller provided his full name but not his telephone number or address when reporting that he had been threatened by a

6

man with a gun.  Id. at 1172.  The Court determined that the 911 call, standing alone, provided the police officers "with the reasonable articulable suspicion" to justify the Terry stop.  Id. at 1174.  The Court noted that, "as a threshold matter, [the] call was not anonymous and was therefore entitled to greater reliability."  Id.  The Court also considered that – unlike in J.L. – an audio recording of the tip was made, providing evidence of the original call.  Id.  The Court further noted that the 911 call was "was entitled to greater reliability than a tip concerning general criminality because the police must take 911 emergency calls seriously and respond with dispatch."  Id. at 1176.  Next, the Court explained that the caller had "risked any anonymity that he may have enjoyed and exposed himself to legal sanction" by making the tip, which increased its reliability.  Id.  Finally, the Court noted that the police were entitled to place additional reliability on the tip because "his call evidenced first-hand information from a crime victim laboring under the stress of recent excitement."  Id. at 1176.

   **B.    Argument**

   The defendant's brief primarily contends that because the 911 caller in this case was anonymous, his tip did not carry sufficient indicia of reliability in order for officers to be able to rely on the tip to effectuate a Terry stop.  To the extent this is the defendant's argument, he entirely misconstrues the facts of the case because, here, the private-citizen 911 caller gave his name, his address, and his telephone number to the 911 dispatcher.  The police heard over their radio that an identified 911 caller, who lived at a particular address and had a phone number known to the police, had given a tip.[3]  This important fact makes every single case cited in the

---

[3] Although the information known to the 911 dispatcher cannot be imputed to the police officers on the scene, United States v. Colon, 250 F.3d 130, 138 (2d Cir. 2001), the information conveyed to the officers in the radio dispatch establishes that the caller had provided a callback telephone number and specific address.  Although the radio dispatcher did not relay the caller's

defendant's brief in support of suppression factually inapposite. As discussed above, in <u>Florida v. J.L.</u>, the tipster that led to the search of an individual who was found to have a gun was anonymous and her location was unknown.  For that reason, and that reason alone, the Supreme Court held that the tip did not "bear standard indicia of reliability in order to justify a stop."  529 U.S. at 274.   Language in <u>J.L.</u> itself, however, suggests that had the Supreme Court been confronted with the facts of the instant case – where the caller provided complete identifying and location information – it would have determined that the tip was sufficiently reliable.  Indeed, the Court distinguished a "tip from a known informant" by noting that, in those cases, the tipster's "reputation can be assessed" and the tipster "can be held responsible if her allegations turn out to be fabricated."  <u>Id.</u> at 270.  Indeed, in <u>United States</u> v. <u>Elmore</u>, the Second Circuit distinguished <u>J.L.</u> and noted that "[w]here informants are known, however, a lesser degree of corroboration is required" for the reputational reasons given in <u>J.L.</u> 482 F.3d at 180.

The instant case, therefore, is akin to <u>Elmore</u> or <u>Terry-Crespo</u>, not <u>J.L.</u>  Here, the private citizen caller, whose veracity is "generally presumed," <u>Elmore</u>, 482 F.3d at 180, called 911 and provided detailed information about himself, including his name, where he lives, and his callback number.  By providing information about himself, he was exposing himself to possible legal sanction should his tip turn out to be a fabrication.  <u>Terry-Crespo</u>, 356 F.3d at 1174.  The caller also gave specific information about the suspect, stating that a black male individual, wearing a black du rag, a black coat, and dressed in all black was in front of 739 182nd Street and that the caller thought that he had a gun. (Def. Exh. C). When officers arrived on the scene, the only person they saw in the vicinity of 739 182nd Street was a black male wearing all black.

name to the officers on the scene, the fact that the officers knew that he provided his telephone number and exact address leads to a reasonable inference that the caller had also provided his name – the most basic of identifying information.

8

(Compl. ¶ 5(a)).  Although a tipster's information does not "have to be one hundred percent correct to provide the police with reasonable suspicion," <u>United States</u> v. <u>Price</u>, 184 F.3d 637, 641 (7th Cir. 1999), in the instant case, it was, in fact, one hundred percent correct.  Given that the 911 caller's veracity is presumed in this case, and given that an individual matching the description given by the caller was in the exact location the caller had described, the NYPD officers who responded to the call had reasonable suspicion to believe the defendant was armed.  Officer-1's stop and frisk of the defendant was therefore justified under <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1 (1968).

The cases cited in the defendant's brief do not alter this conclusion since the defendant relies exclusively on cases in which the tipster was anonymous.  For instance, In <u>United States</u> v. <u>Jackson</u>, 2011 WL 1431983 (S.D.N.Y., Apr. 12, 2011) (NRB), a case cited by the defendant, Judge Buchwald granted a defendant's motion to suppress evidence that was located after a tip from an "unknown female" called 911 to report a man in possession of a gun. <u>Id.</u> at *1.  The caller stated to the 911 operator that she wished to remain anonymous and did not provide a callback telephone number.  <u>Id.</u>  Judge Buchwald rejected the Government's argument that this anonymous tip was sufficiently reliable, in part because the caller was simply an "anonymous tipster."  <u>Id.</u> at *10.  Similarly, in <u>United States</u> v. <u>Muhammed</u>, 463 F.3d 115 (2d Cir. 2006), another case cited by the defendant, the Court confronted a situation in which an anonymous 911 caller provided a tip that "lacked any indicia of reliability."  <u>Id.</u> at 122.

That the 911 caller did not actually see the gun, but nevertheless believed (correctly) that the defendant had a gun, does not alter this analysis.  First, the caller explained to the 911 dispatcher why he believed the defendant had a gun: "I think there's a guy in front of the

building with a gun, man.  I just got into it with him."  Later, the caller explained: "I got into an altercation with this guy . . . and I think he got a gun now . . . [c]ause he came back to the house. He was ringing my doorbell at 3:30 in the morning." (Def. Exh. D). When the 911 dispatcher asked the caller if the defendant said he was "coming back with a gun," the caller responded "yes he did."  The caller also stated that he believed that the defendant "gotta record before, a murder," suggesting that the caller knows the defendant.  Given, therefore, that the 911 caller reported that (1) he and the defendant had had an earlier altercation; (2) the defendant said that he was coming back with a gun, left, and then came back in the middle of the night; and (3) the defendant was previously known to the caller, there was reasonable suspicion to believe that the defendant had a gun such that officers were entitled to effectuate a Terry stop.

Accordingly, the defendant's motion to suppress the gun should be denied. Moreover, the defendant is not entitled to a hearing on this matter since there are no issues of fact in dispute since nothing in the defendant's sparse affidavit contests the Government's version of the facts in this case.

## II.   The Defendant's Other Motions Should Be Denied

The defendant has submitted papers making two additional requests or motions. First, his brief moves to compel the Government to produce additional discovery, including (1) unredacted copies of the 911 call and radio run and the pedigree information of the 911 caller; (2) state Grand Jury testimony of witnesses; and (3) all NYPD documents relating to this incident.  (Def. Br. 1 n.1).  Second, he has submitted a separate letter alleging "an apparent irregularity" in the indictment in this case.  The Government will comply, in part, with the defendant's request for additional discovery.  The remainder of the defendant's request should be

denied.

### A.      Discovery Request

The Government will produce to the defendant the state Grand Jury testimony of two witnesses who testified on the defendant's behalf.  The Government has already produced to the defendant all NYPD documents discoverable pursuant to Federal Rule of Criminal Procedure 16.  The Government will not, at this time, produce materials, such as the state Grand Jury testimony of police officers or the notations in the officers' memo books, that constitute material under the Jencks Act, Title 18, United States Code, Section 3500 (requiring that the Government produce statements of witnesses after that "witness has testified on direct examination"). Instead, the Government will produce materials pursuant to Section 3500 shortly before the hearing in this matter, should one be necessary.  The Government is also, of course, aware of its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and will promptly produce Brady materials should the Government become aware of any in this case.

### B.      Grand Jury Indictment

In a letter dated July 19, 2012, the defendant renews an objection to the Grand Jury's indictment that he originally made at his initial appearance in this case.  Specifically, the defendant appears to believe that the foreperson's signatures, which are on both the front and back of the indictment, "appear to be different" from one another. (Def. Ltr.).  In his letter, the defendant does not specify what remedy he seeks should the Court agree that the signatures on the front and back of the indictment do not match.  No matter the remedy he seeks, however, the defendant's request should be rejected since, as the Supreme Court has held, "[t]he grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon

particularized proof of irregularities in the grand jury process." United States v. Mechanik, 475

U.S. 66, 75 (1986).  Here, the defendant can make no such showing since the two instances of

the foreperson's signature on the indictment, while not exact duplicates of one another, were

clearly made by the same person.  Moreover, the defendant does not set forth any theory about

why he believes the signatures do not match.  The defendant cannot meet his burden under

Mechanik with this generalized accusation of irregularity and therefore his request should be

denied.

## CONCLUSION

For the foregoing reasons, the Government submits that a hearing is unnecessary

to resolve the defendant's claims, and the defendant's motion to suppress the gun should be

denied as a matter of law.  The defendant's other requests should also be denied.

Dated:          New York, New York
                August 8, 2012


                               Respectfully submitted,

                               PREET BHARARA
                               United States Attorney
                               Southern District of New York


                          By: _____
                               Andrea L. Surratt
                               Assistant United States Attorney
                               Southern District of New York
                               (212) 637-2493