UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

UNITED STATES OF AMERICA

          -v-

JAMES PETERSON,

                        Defendant.

------------------------------------------------------------------------X

12 Cr. 409 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On September 28, 2012, the Court issued an Opinion and Order ("Opinion") (Dkt. 22) denying a motion by defendant James Peterson to suppress the loaded Taurus 9-millemeter firearm found on his person following a police stop and frisk of him in the early morning hours of February 20, 2012. Peterson now moves for reconsideration of that decision.[1] Peterson argues that the Court's decision was in error for three distinct reasons.

First, Peterson challenges a central factual finding that the Court made, based on the evidence adduced at the suppression hearing in this case, to wit, that the arresting officers heard the following statement made by the Police Dispatcher: "The complainant is in apartment [redacted] on the [redacted] floor." Peterson Mem. 1–4.

Second, Peterson argues that the Court erred in citing case law to the effect that probable cause may be based on hearsay and circumstantial evidence. *Id.* at 4–5.

---

[1] Peterson's arguments are contained in a letter-memorandum ("Peterson Mem.") (Dkt. 24) dated October 12, 2012. The Government's responses are contained in a letter-memorandum ("Gov't Mem.") (Dkt. 25) dated October 17, 2012.

Third, Peterson argues that the Court erred in identifying, as a factor reinforcing its conclusion that the stop had been justified, that there was an ongoing emergency, as reflected in the first statement made in the police dispatch: "Dispute with a firearm." *Id.* at 5.

For the following reasons, Peterson's motion is denied.

## I.    Applicable Legal Standard

"Although the federal and local rules of criminal procedure do not specifically provide for motions for reconsideration, courts in this district have applied Local Civil Rule 6.3 in criminal cases." *United States v. Aleynikov*, 785 F. Supp. 2d 46, 60 (S.D.N.Y. 2011) (citing *United States v. Yannotti*, 457 F. Supp. 2d 385, 388–89 (S.D.N.Y. 2006), *United States v. Ramerez*, No. 03-cr-834, 2004 U.S. Dist. LEXIS 10401, at *2–3 (S.D.N.Y. June 7, 2004)).

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The purpose of Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Naiman v. New York Univ. Hosps. Ctr.*, No. 95-cv-6469, 2005 U.S. Dist. LEXIS 6817, at *3 (S.D.N.Y. Apr. 21, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Accordingly, "[c]ourts have repeatedly warned parties that motions for reconsideration should not be made reflexively in order to reargue those issues

[2]

already considered when a party does not like the way the original motion was resolved."

*Families for Freedom v. U.S. Customs & Border Prot.*, No. 10-cv-2705, 2011 U.S. Dist. LEXIS

113143, at \*7 (S.D.N.Y. Sept. 30, 2011) (citing *Makas v. Orlando*, No. 06-cv-14305, 2008 U.S.

Dist. LEXIS 40541, at \*1 (S.D.N.Y. May 19, 2008)) (internal quotation marks and additional

citation omitted).  It has thus been said that courts "should not revisit a prior order unless there is

'an intervening change of controlling law, the availability of new evidence, or the need to correct

a clear error or prevent manifest injustice.'" *United States v. Gambardella*, No. 10-cr-674, 2011

U.S. Dist. LEXIS 144357, at \*3 (S.D.N.Y Dec. 15, 2011) (quoting *Virgin Atl. Airways, Ltd. v.

Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

## II.    Discussion

Peterson's arguments do not justify reconsideration.  His principal claim of error is not

based on legal error or an overlooked precedent or item of evidence.  Instead, Peterson asks the

Court to revisit its fact finding.  He argues that the Court wrongly assessed the assembled direct

and circumstantial evidence when it found that the arresting officers heard a particular sentence

contained on a radio dispatch.  Peterson's second claim of error is equally unfit to justify

reconsideration.  He contends merely that the cases cited by the Court, in support of the utterly

unremarkable proposition that probable cause may be supported by hearsay or circumstantial

evidence, are factually inapposite.  Finally, Peterson's third claim of error, like the first,

challenges the Court's fact finding:  Simply put, Peterson disagrees with the Court's assessment

of the meaning that can fairly be assigned to a discrete sentence ("Dispute with a firearm") in a

police dispatch.

Because Peterson's motion for reconsideration is based on claims of error that fall far

short of the standard for reconsideration under Local Rule 6.3, the Court denies that motion.  *See,*

[3]

*e.g.*, *Lebewohl v. Heart Attack Grill LLC*, No. 11-cv-3153, 2012 U.S. Dist. LEXIS 126171 (S.D.N.Y. Sept. 5, 2012); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-cv-7801, 2012 U.S. Dist. LEXIS 71611 (S.D.N.Y. May 22, 2012); *Dotson v. Farrugia*, No. 11-cv-1126, 2012 U.S. Dist. LEXIS 71608 (S.D.N.Y. May 22, 2012); *Oscar v. BMW of N. Am.*, No. 09-cv-11, 2012 U.S. Dist. LEXIS 9230 (S.D.N.Y. Jan. 25, 2012). The Court reaffirms its decision and the analysis in the Opinion.

In the interest of leaving a clear record for appeal, however, the Court briefly addresses two arguments that Peterson makes. Both challenge the Court's factual determination that the officers heard the statement by the Police Dispatcher that the complainant was in a particular apartment.

A.      Peterson notes that neither officer testified that he heard the statement, which came immediately after statements by the dispatcher that one or both officers testified they *did* hear, including relating to the subject's description. Peterson also notes that Officer Marte was asked if he recalled hearing anything else over the radio other than that to which he had testified, and he said no (Tr. 15); and that Officer O'Connor similarly testified (Tr. 35–36). On the basis of this testimony, Peterson argues that the Court erred in inferring that the officers heard the Police Dispatcher's statement about the apartment. Peterson Mem. 2–3.

As reflected in its Opinion, the Court has carefully evaluated the officers' testimony, including the portions on which Peterson relies. *See* Opinion at 2–11. The Court's firm assessment is that each officer's testimony reflected one thing only: his recollection as of the date he testified (August 28, 2012) of what he heard during a short and fast-moving series of events that occurred more than six months earlier. The Court concludes, emphatically, that the officers' inability to recall other statements reflected on the tape does not mean that, in real time,

[4]

the officers did not hear other statements contained on the tape. The Court bases this conclusion on two factors.

First, the Court had the opportunity to observe the officers as they testified. The Court found each officer credible, and to be attempting in good faith to answer counsels' questions. It was apparent to the Court that the officers had quite limited recall of the events of that night. This was due, no doubt, to the passage of time and the many intervening arrests and stops each had made in the intervening six months. Tr. 9, 32. It may also have been due to the fact that neither officer had heard (and therefore had the opportunity to have his memory refreshed by) the tape containing the Police Dispatcher's report at any time between the original dispatch on February 20, 2012, and his taking the stand.[2]

Second, as a matter of fair inference, it is logical that the officers would remember months later that the Police Dispatcher had reported a man with a gun, *see, e.g.*, *id.* at 11, 19–20, 22, with a given physical description, *see, e.g.*, *id.* at 11, 22, but not recall that the Police Dispatcher had also stated that the complainant was in a particular apartment. That is because the first two facts (the gun and the subject's description) were operative facts immediately relevant to the officers' response to the situation at hand. The fact of a man with a gun was what triggered the need for police intervention. And the description of the subject was necessary for the police to know in order to effectively act on the lead they had been given. In terms of urgent functional importance, the fact that the complainant was in a given apartment was far less significant. Hence, it was less likely to be retained or recalled six months later.

---

[2] Consistent with this, Officer O'Connor testified that it is possible that he had heard "a little bit more" than he presently recalled. Tr. 37.

[5]

B.      Peterson also challenges the statement in the Opinion that "Peterson has not articulated any reason to infer that the officers were inhibited from hearing" the sentence in the police dispatch containing the complainant's apartment number. Peterson Mem. 3 (citing Opinion, at 9). Peterson speculates that the officers may not have heard that statement because "their lights were on and their siren was blaring." *Id.*

To the extent that Peterson suggests the officers' siren was turned on between the portion of the dispatch which the officers recalled (culminating in the physical description of the subject) and the ensuing sentence (containing the apartment number), that is not only conjectural—it is demonstrably incorrect. The Court has listened closely to the tape recording of the conversation between the Police Dispatcher and the two officers. There is no siren audible at any point during the relevant portion of the tape or the seconds immediately following it. Notably, several seconds after the Police Dispatcher related the apartment number to the officers, there are several statements (albeit unintelligible) attributed to the officers. Had the officers' siren been on at the time of those statements, the siren almost certainly would have been audible in the background as the officers spoke. There is, however, no siren sound audible.

Peterson's conjecture is also logically improbable. As the tape reflects, the Police Dispatcher related the complainant's apartment number to the officers immediately after describing the clothing and appearance of the subject. The tape reflects a barely perceptible pause between the end of the Police Dispatcher's statement containing that description ("...wearing all black") and the start of the Police Dispatcher's ensuing sentence ("The complainant is in apartment [redacted]"). Peterson's suggestion is that the officers may have chosen to activate the siren during that extremely narrow time window. But, logically, if the officers were to have turned on a siren that would have inhibited their ability to hear the Police

[6]

Dispatcher, they would have done so only once it appeared that the Police Dispatcher had no further information to report to them. It is not logical that the officers would have disabled themselves from hearing information potentially relevant to their mission, or to their safety. Yet, listening to the tape reveals, it was not until after the Police Dispatcher had related the complainant's apartment number that the Police Dispatcher materially paused in his report to the officers. It was, in other words, not until that point that the officers could fairly infer that the Police Dispatcher's report was complete.

For these reasons, and those set forth in the Court's earlier Opinion, the Court reaffirms its factual determination that the arresting officers heard the Police Dispatcher's statement as to the complainant's apartment number.

## CONCLUSION

For the foregoing reasons, Peterson's motion for reconsideration is denied. A conference is hereby set for November 2, 2012 at 10:30 am in Courtroom 18C. Because the denial of this motion for reconsideration may alter the defendant's calculus in deciding whether to go to trial or seek a pretrial disposition, the Court finds that exclusion of time, from the date of this Order until the next scheduled conference, serves the interests of justice and outweighs the interests of the defendant and the public in a speedy trial. Time is therefore excluded to and including November 2, 2012. *See* 18 U.S.C. § 3161(h)(7)(A).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 19, 2012
       New York, New York

[7]